All right, our third case for this morning is Fessenden against Reliance Standard Life Good morning, may it please the court. Late is late. Late is late, Judge Lee stated in finding that Reliance Standard blew the 90-day ERISA deadline. Judge Simon agreed, finding that Reliance Standard failed to comply with the ERISA timing regulations. Even Reliance Standard acknowledges they blew the regulatory deadline. In this circuit, if you blow a deadline, you don't get the benefit of the Substantial Compliance Doctrine. That's what the Edwards case says. In Edwards, this court held we will not import the Substantial Compliance Doctrine into the matter of administrative deadlines under ERISA. Let me ask you this. Everybody, starting with the two district court judges and further, has been looking at the Second Circuit's decision in the HALO case. Although the Second Circuit, on the whole and by and large, took a pretty tough approach to Substantial Compliance, it did say that maybe a narrow version of that doctrine might apply if the insurer's failure was both inadvertent and harmless. I'd like you to talk about that and also tell me whether those criteria are satisfied, whether more fact-finding might be necessary to see if that was the case here. What would we do if we were following HALO? Under HALO, first of all, the Second Circuit said the burden rests with the insurer or the plan administrator to prove three things. First of all, they must have procedures that conform with the regulations. We didn't see those in this case. Secondly, they must show... When you say we didn't see those, it's not like Reliance didn't know what the deadlines were. Mr. Fessenden wasn't complying with quite a few regulations either, starting with sending his claim in six years after he should have and then sending the appeal to the wrong place and so on. There were some hiccups on all sides. That's right, Judge, but the HALO case puts the burden on the plan to prove that they have procedures in full conformity with the regulations. We didn't see those procedures. Secondly, they have to show that the error was inadvertent. Their claim notes show themselves that they knew the deadline was July 23rd. They noted that originally when they first received the appeal. They had the single record review that they were going to utilize to deny the claim by June 4th and did nothing with the claim until they received notice that the lawsuit had been filed. Only then, on August 28th, do we see the same date that they received notice of the lawsuit is the appeal denial sent out. Their own claim notes show the mistake wasn't inadvertent. You began by saying late is late. I understand that, but there's a range. There's one way of looking at this record that is maybe about three days late. There's another way of looking at this record that is closer to 30 days late. Certainly late. Either way, I don't think there's anything you can do to manipulate this to make it on time. If we're at the three day end and they don't get this out until three days later, what do we do with that? I know that that takes you to thinking there should be de novo review. That you should lose the benefit of the deferential standard. That's right. Because under the Department of Labor's preamble, they specifically say if they violate the regulations, there's no de novo review. Is the preamble a regulation or is the preamble something else? It's a preamble to the regulations that comply. I'm just asking for the legal effect of a preamble. Under the case law from the circuit, both the Edwards and the Dragas opinions require strict adherence. That's what the Edwards case said. We are not going to import substantial compliance into a literal requirement of ERISA. In this case, the regulation isn't ambiguous. 90 days is 90 days. That's what the Burns case said. Under Burns, the court said we won't apply substantial compliance when there's a literal requirement. The Burns court noted that the substantial compliance doctrine is part of federal common law that was created in those instances where there is it where ERISA doesn't speak. Counsel, I want to ask you a question. You and the court below and you both in your briefs talked about HALO. But the Becknell decision from the Third Circuit still treats timeliness, even under the new regulations, as a matter of substantial compliance, but says that the lack of timeliness can be a factor that the court can consider in deciding whether the decision was arbitrary and capricious. Do you know that case or do you have a view about the Third Circuit? If you look at those cases that do allow substantial compliance that are outside of this circuit, there's an in-depth analysis about whether there was an ongoing, good faith discussion going on between the plan administrator and the claimant. In this case, we see from the claim notes they issued two form letters. Just to be clear, but that's a dispute about whether in fact it was good faith and if the substantial compliance standard applies, we would find it satisfied here, right? That's not a threshold because I take you to be arguing the threshold point that we shouldn't take substantial compliance into account at all and just de novo review applies because they were late, right? That's correct, Your Honor, because if you look at the Edwards case, there was no analysis about whether the plan administrator was harmed or any of those considerations that we see in HALO. This court found that the appeal was late. There was a 180-day deadline that was consistent with the regulations. The appeal was late and that was fatal to the claim at that point. Also, under the Dragas case, the Dragas case found that reliance standard was late and that the regulations stripped them of de novo review. However, it was waived because the plaintiff didn't immediately file a lawsuit. Let me ask you another question. Let's imagine that we accept your argument and we say late is late. Essentially, at the time your client filed suit, it was deemed exhausted. There's nothing to which we can defer, at least at the appeal level. Why wouldn't we give arbitrary and capricious review then to the initial denial? Judge Lee looked at that specific issue. Reliance standard raised it when we filed our motion to determine the standard of adjudication. Judge Lee rejected that argument saying it was disingenuous for reliance to argue that they could pick and choose which regulations they were going to comply with and which ones they believed were merely suggestive. In this case, the regulations specifically say they have to issue a decision on the appeal within 90 days. Sure, and then if they don't and if they're late, I'm just saying this might be one way it might work, then they lose the benefit of making their description more fulsome, maybe, so that a court might be more persuaded that it was well-reasoned and not arbitrary and capricious and they just have to stand on whatever they initially said. But that was still a discretionary decision to deny the claim initially. So I guess I'm just trying to get you to help me understand what would we be reviewing then? So why do we have to review that initial denial de novo? Well, under the Krolnick v. Prudential case, this court has said that with de novo review, it's treated like any other civil action. So at that point, we are under a civil action and there isn't any type of deference given to that initial decision. I thought your answer might be that an appeal in this context, like other administrative appeals, permits the taking of new evidence, additional evidence, going beyond the scope of the initial application and denial. And if the plan administrator fails to render a decision within the deadline, the appeal is deemed denied based on that supplementary record, and that's what comes to the court. And the question of the appropriate standard of review doesn't trace back to the original denial, but we're still reviewing the appeal record just on the basis of a legal conclusion that the failure to render a decision within the applicable time limits means that the claim is deemed denied, he's exhausted, and it comes to us, or comes to the district court and then to us, and there's de novo review based on the supplementary record. It's not an appeal in the traditional sense where the appeal is limited to what was at issue in the initial denial. So we're not looking through to the initial denial. We're still resolving the court. It's giving judicial review to the denial of the claim that is deemed effective when the decision time expires and there is no decision. That's correct, Your Honor. The ERISA statute requires a full and fair review of the claim, which occurs during the appeal process. The process is designed to give both sides an opportunity to explain their positions. The regulations say that once they have passed that 90-day regulatory deadline, the appeal process is deemed exhausted, and they have the right to pursue their remedies in federal court. In this case, we filed the appeal on April 24th. They received that single record review on June 4th, and nothing further happened until August 28th. We filed the lawsuit August 19th, and at that point the claim is deemed exhausted, and the federal judiciary at that point reviews the claim de novo. To be clear, there was no ongoing good faith discussions during the appeal process. So if we were to look at the record, we would not find a back and forth going on between Mr. Fessenden and Reliance? No, Your Honor. There were two form letters sent out, one to say we received your appeal, the second to say we need an additional 45 days, which in looking at the record there doesn't appear to be a reason why they even needed those additional 45 days. They're entitled to them. That's correct, Your Honor. But they had Dr. Brush's record review by June 4th. Right, and we do have a supplementary record being made on appeal by your client. Right, that's correct. The material point that there's more than just what was implicated at the original claim denial phase. That's right, Your Honor. Where all the action is in these cases administratively is in the appeal. That's correct. We submitted, I believe it was over a 500-page appeal to Reliance Standard consisting of medical records, voluminous medical records, showing he had suffered from the symptoms of this condition going way back to 2008. Well, that's what you had to show. I mean, that's the other challenge in this case. And I don't know from Reliance's standpoint whether any time in recent time matters, but it was hard for them to go back and reconstruct, just as it was hard for you perhaps to go back and reconstruct what his condition was during the first three months of 2008. Well, remember, Your Honor, Reliance Standard did find he was disabled during that time period. They did find when he applied for short-term disability benefits that he was disabled as of January 2nd, 2008, and approved him for short-term disability. Also, the Center for Disease Control says 90% of individuals who suffer from chronic fatigue go undiagnosed because of the lack of education in the medical community and the lack of testing that actually confirms this condition. And they haven't brought forth any indication that they would have done anything differently than what they did in this case. They got all of his medical records, all of them. And then they had two record reviewers review the claim. There's been no indication that they would have done anything differently or taken any different course than what they did in this case. Okay. Well, maybe you can take a break, and we'll hear from you on rebuttal and hear from Reliance now. Thank you. Ms. Kirsting. Good morning, Your Honors. May it please the court, counsel, I apologize in advance. I'm a little sick. If you need water, you should bring a glass up. I fear it won't help, but I will attempt to not cough and speak as loud as I possibly can. And before I delve into the substantial compliance issue, which in my opinion is certainly the crux of this case, I did want to correct a misstatement. The argument mentioned that my client approved short-term disability benefits for Mr. Fassenden and had found him disabled in January of 2008. That's not correct. Actually, his claim was denied due to a lack of medical certification between January 2nd and March 17th. The letter is in the file and can be viewed as part of the claim notes, which are on AR 1695 through AR 1696. An appeal thereafter was filed by Mr. Fassenden challenging that determination, asking for benefits after March 17th. And my client and I argued that in our appellate brief, again, could not find any medical evidence at that point supporting disability under the short-term plan. And Oracle, the plan administrator, given the fact that the short-term disability plan was self-funded and not fully funded by an insurance policy, overruled my client, which it has the power to do, under an appeal as the plan administrator has the final decision-making authority. It overruled reliance standards saying, okay, fine, we'll pay benefits from March 17th through May 11th. There have been no benefits paid, and my client has never made a determination that Mr. Fassenden was disabled in 2008. I just wanted to make sure the record was correct on that point, as I feel that it's important. Having said that, going back to the crux of the case, the late determination. My first point is my client recognizes that 90 days is what the regulation set out. My client also, however, believes that there is tolling which allows, based on the Department of Labor standards, up to 45 additional days if documentation is requested, not received. But let me tell you what my problem is here. As the district judge computed all of this, you were late. You were either three days late or 30 days late or somewhere in between with the decision on this appeal. And ERISA is, we can kindly call it, a large and complicated statute. And lots of people have to comply with it. They're plan administrators, they're insurance companies, they're individuals, they're employers. And so our reason for taking a strict compliance approach, whether it's how do you change a beneficiary or whether it's how many days are there, is that it would actually become administratively even more nightmarish than it is if we had to sit down every time and say, well, you know, they were three days late, but maybe that's okay. And these other people were 30 days late or 45. And turning each one of these into a touchy-feely, you know, is it too late to be useful is an inefficient way to go about it. So that's my first comment. And the other thing I would like you to comment on is what seems to be the pretty clear language in the preamble saying, you know, it's not like you have to give benefits to somebody if you're late, but you don't get the benefit of that deferential standard of review. You just have got to stand to the merits. Okay. To address the first point, I understand that approach, but I don't believe that that's the law in this circuit. I don't believe it's the law in any circuit, really. with the Department of Labor regulations is not what the circuit follow. They follow either a substantial compliance approach, or they follow the new approach, which is the HALO approach, the prejudicial slash. But I'm not sure you could survive under HALO, because you've got under HALO to show that your failure was both inadvertent and harmless. And I don't think you can do that. I don't see how you cannot do that, frankly, Your Honor. The inadvertent part, you knew perfectly well where these deadlines were. How can it be inadvertent? I don't know necessarily. And it's your burden of proof under HALO to show both of those. I don't necessarily think that. My client was fully aware, given the tolling possibilities, that it was late at that point. What tolling possibility might it have been thinking applied? There were several days up to, I believe, almost one and a half weeks, when my client was waiting for signed authorizations to be able to obtain records. But why is that relevant under the regulatory scheme? That's why you get the 45 days plus the additional 45, to account for just that. Tolling would generally apply whenever there's information that is needed, that's being requested, that is not received. What's your regulatory support for that? That is directly in the regulations, Your Honor. So there really are no deadlines then? You can wait as long as you want to while you're collecting information? Is that it? No, the regulation set out when tolling starts, when the request for information is being made, when tolling completes, when the information is being received. And then the deadline keeps on running. And your opponent has said that you had this information, the second medical opinion, more than a month in advance. And my client had 2,000 pages of medical records to review for nine years, while Ms. O'Ryan seems to suggest that this letter drafted itself overnight, and that the records were summarized. It did. It's kind of a kind of pasty kind of letter. I don't believe so. The second one? I don't believe that it's a patent-based kind of letter. It needed to be written. Somebody took the time to review records. My client would not document the AR for the claims examiner doing his job, which is sitting down and working through the medical history. Mr. Fassenden went out of work on January 2, 2008. He submitted his claim in 2014. My client had thousands of pages of medical records spanning 2005 through 2014. Yes, they had on top of that, of course, two comprehensive opinions relative to those medical records. Nonetheless, however, they needed to work through those medical records. And they would not have documented the AR while they were doing that. But your client was late even taking account of the tolling. Yes. That's the problem. I understand my client was a couple days late, but I don't believe that that lateness, A, deprived Mr. Fassenden of any rights. First of all, he had already filed suit. Second of all, it was a decision that affirmed the initial determination. So there's a real problem with filing your statement after suit's been filed. You could tailor it any way you wanted to. If you can just finish up the administrative record after suit's filed. What are you suggesting, Your Honor? If you can wait to complete the administrative review and still get the benefit of arbitrary and capricious review, but you file your judgment on the claim after suit's been filed, there's a real risk of strategic behavior. Right. Because that way you can secure this highly deferential review after the fact. I don't believe that necessarily a suit that's being filed is something that is being reviewed by the claims examiner while he's working on a letter. I'm saying it was filed after suit was filed. Right. But my client wasn't served at the time the letter was drafted. I'm saying a rule in general that allows the insurer, the plan administrator, whomever it is, to get arbitrary and capricious standard of review on something that isn't given to the claimant until after suit has been filed is a troublesome rule to me. I believe that the substantial compliance standard exactly says that. It does not in the context of missed deadlines, though. That's the holding of Edwards. But Edwards has a totally different fact pattern. Edwards looks at deadlines for the claimant, not for the plan administrator. Why should that not apply both ways? Actually, to quote Justice Gorsuch in a different context, this is the goose and the gander rule, then I would still submit that the Department of Labor has always excused harmless and inadvertent mistakes, even the new regulations, which came into effect this year. On the part of claimants or only on the part of insurance companies? On the part of the claims administrators and the plan administrators. The regulations that came into effect this year specifically incorporate a de minimis exception for such de minimis violations, and de minimis violations are excused, which means that if the essence and the substance of the regulations is still adhered to, then a de minimis violation does not strip a claims administrator of its discretion. But might timeliness be different? I mean, that might be true, and did the content of the letter, did the notice read exactly as it should? But could timeliness be different, and what you're saying still be true about the deference given to other kinds of mistakes? I don't believe that timeliness is different than content of letter, Your Honor, especially if it's timeliness that really does not deprive the claimant of the full and fair review that was otherwise granted. This claimant was provided with independent medical opinions, which is not what the regulations require. It requires much less than that. My client went beyond that. They obtained vendors who communicated with third-party independent doctors that have no connection to my client, something that the court in Dragas found as being inherent for a full and fair review. My client had those specific peer reviewers contact Mr. Fessenden's physicians. And most of all, and I think what speaks really for the good faith of my client in this case, my client accepted this claim. It was submitted in 2014, six years after this gentleman went out of work, at which point my client could have denied the claim under Indiana's Notice of Prejudice Law. It could have denied the claim under the contract language, because proof of loss and notice of claim are to be submitted within 30 to 90 days after a date of disability. My client did not do that. My client took Mr. Fessenden's claim serious and spent hours and hours collecting medical records, reviewing his claim over a span of nine years, trying to reconstruct his disability back to January 2, 2008, and found it unsupportive. Counsel, let me ask you another question. As Chief Judge Wood points out, it's odd to say that after suit has already been filed, you can still then come in after the fact late with the letter. What would you say would the standard of review change if, let's imagine, things moved at a pretty fast clip and there was summary judgment or a motion to dismiss filed within 30 days and on day 29, after people are presumably at work on those motions, boom, there's the letter? I don't think that is the situation. But it could be. Does the substantial compliance standard still apply so that the court has to say, well, was 29 days too long? Was this unreasonable? I think it depends on the circumstances. Your Honor, on a specific claim review, if a dialogue was being kept up during those additional days, then it was clear that the specific claims administrator in that case was still dutifully reviewing and just needed one additional piece of evidence, which for whatever reason was hung up somewhere. So everybody has to stop at that point and say, okay, well, no, no, no, we're not doing this de novo based on the initial decision and the record since, but now we're going to stop everything and start over again with the letter that's just been submitted. I don't think it changes anything, especially if it's not a decision to overturn. If it's a decision to overturn, then of course the lawsuit would be done because benefits would be awarded and there's nothing else to seek. If it's a decision to uphold, there's also no harm because it's a restatement of the previous decision. It is not new information. The record that the court is reviewing on, though, in Judge Barrett's hypothetical changes dramatically on day 29. It goes from no input from the insurer because the suit was filed before the insurer got around to finishing the appeal to all of a sudden on day 29 another enormous opinion from somebody supported by whatever it's supported by. And so the court has wasted its time for the 30 days, the 29 days, whatever it may be. As you know, you can file a motion for summary judgment at any time. Right. I have, granted, never seen that. But yes, technically maybe that is possible. Maybe it is possible to file a motion for summary judgment. At that point, I am sure I would argue that that letter should be made part of the record and the court could decide or not decide. Until day 29, by our hypothesis. You would have to go to court and say, trust us, we're about to send a letter out. And the court would say, what? At that point, probably the train has passed for that letter. I think so. That is not the case in this case. In this case, my client was working on that letter. But whatever rule we adopt in this case, we have to think about how it might apply in other cases, right? I believe that cases should be decided on a case-by-case basis. And in this specific case, I believe that substantial compliance is a fair solution to what happened here. My client did not violate the essence and the substance of the regulations just because the letter was a couple days late. It just did not. It provided access to the information. It engaged in a dialogue. It accepted a claim that was woefully late. It worked with Mr. Fassenden to obtain information to give him a full and fair review. It provided access to the opinions of the treating physicians. And it had its peer reviewers talk to the independent physicians to evaluate his condition. I believe in that case it would be harsh and unfair to give my client no chance of the deference. Did Reliance notify the plaintiff here about these, or was tolling the time for additional information? It's in its letter usually that whenever information is being requested, Reliance Standard informs that tolling under the regulations. Well, I don't mean that generic letter that says to the extent that additional information is needed, we will toll. I'm talking about whether there was a specific notification to the plaintiff that the time was being tolled to obtain additional information. Not in addition to the initial letter that says... So just this generic. ...we're requesting this information right now to be tolled. Okay. But nothing else. All right. Well, thank you very much. And you have about a minute, Ms. O'Ryan. In the Edwards case, one of the main reasons they refused to apply the substantial compliance doctrine in that case is because they didn't want to waste judicial resources deciding on a case-by-case basis whether a party had substantially complied with a deadline or not. As far as Reliance's argument that there was some discussions, there was activity, we pointed out their claim notes, Your Honors, that shows nothing was happening between early June and then on August 28th when they were notified of the lawsuit. That's the same day it shows that they reaffirmed the denial of the claim. The only instances where the court has applied substantial compliance is where there's an ambiguous provision that's subject to interpretation. That isn't the case here. The Department of Labor's preamble, just so you know, has now been incorporated into the new regulations applicable as of April 1st of this year. There was no tolling letter sent out. The tolling regulation only allows tolling for special circumstances such as a hearing, and the notification must be sent to the claimant of those special circumstances, but in no event, the regulation says, can the tolling pass the 90-day deadline. Thank you. Thank you very much. Thanks to both counsels. We'll take the case under advisement.